306-05/MEU
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
DS NORDEN A/S
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax

Michael E. Unger (MU 0045)
Lawrence J. Kahn (LK 5215)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

DS NORDEN A/S,

                    Plaintiff,

  - against -

GLOBAL INFRASTRUCTURE HOLDINGS, LTD.,

                    Defendant.
-------------------------------------------------------------------x

05 CIV 7245 (HB)

**VERIFIED COMPLAINT**

      Plaintiff DS NORDEN A/S ("NORDEN"), through its attorneys Freehill Hogan & Mahar, LLP, as and for its Verified Complaint against Defendant GLOBAL INFRASTRUCTURE HOLDINGS, LTD. ("GLOBAL"), alleges upon information and belief as follows:

      1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract of charter party by Defendant GLOBAL. The case also falls within the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333. Jurisdiction is also proper pursuant to the Federal Arbitration Act, 9 U.S.C. §1 *et seq.* and this Court's federal question jurisdiction pursuant to 28 U.S.C. §1331.

2.     At all times relevant hereto, Plaintiff NORDEN was and still is a foreign business entity duly organized and existing under the laws of a foreign country with a registered office at 49 Amaliegade, 1256 Copenhagen, Denmark.

3.     At all times relevant hereto, Defendant GLOBAL was and still is a foreign business entity duly organized and existing under the laws of a foreign country with a registered office at LOB 16 411, Jebel Ali Free Zone, Dubai, United Arab Emirates.

4.     On or about April 15, 2005, Plaintiff NORDEN, as time-chartered disponent owner of the M/V BONASIA, entered into a maritime contract of charter party on the GENCON form with Defendant GLOBAL, in which NORDEN agreed to let the M/V BONASIA to GLOBAL, for a voyage from Norfolk, Virginia to Ploce, Croatia for the carriage of a cargo of coal at agreed rates for freight and demurrage.  A copy of the charter party is attached hereto as EXHIBIT 1.

5.     The M/V BONASIA arrived at Norfolk, Virginia and tendered Notice of Readiness to load cargo on April 28, 2005.  From May 4 to May 7, 2005 the vessel loaded a cargo of coal at Norfolk, Virginia.

6.     The vessel thereafter sailed to Ploce, Croatia where she arrived and tendered Notice of Readiness to discharge on May 23, 2005.  The vessel soon thereafter berthed and discharged the cargo with discharge being completed on May 26, 2005.

7.     NORDEN has satisfied all of its obligations under the charter party.

8.     Pursuant to Clause 23 of the charter party, 95% of the freight was due to be paid within five (5) banking days after completion of loading and signing/releasing Clean on Board Bills of Lading.  Defendant GLOBAL arranged and/or otherwise directed that the payment of the 95% of the freight owed to Plaintiff NORDEN be paid by

Defendant GLOBAL's agents and/or managers and/or affiliated company Stemcor UK Ltd.

9.      Stemcor UK Ltd. is a foreign business entity with an office at 1 Ropemaker Street, London, England which acts in the capacity as agents and/or managers and/or paying agent of Defendant GLOBAL and in that capacity, receives, holds and transfers assets for and on behalf of Defendant GLOBAL, and is in possession of assets of Defendant GLOBAL.

10.     Pursuant to Clause 23 of the charter party, 5% of the freight calculated on the basis of the quantity of cargo listed on the bill of lading was to have been paid within thirty days after completion of discharge.   In breach of the charter party Defendant GLOBAL has refused or otherwise failed to pay outstanding freight in the amount of $68,062.01 as and when the same became due.

11.     Pursuant to Clause 23 of the charter party, undisputed demurrage was to have been paid by Defendant GLOBAL to NORDEN within thirty days after completion of discharge.   In breach of the charter party Defendant GLOBAL has refused or otherwise failed to pay demurrage in the amount of $206,237.20 as and when the same became due.

12.     A copy of the invoice issued by NORDEN to GLOBAL dated July 26, 2005 listing the freight and demurrage owed is annexed hereto as EXHIBIT 2.

13.     Despite due demand by NORDEN, Defendant GLOBAL has refused or otherwise failed to pay the outstanding amounts due.

14.     GLOBAL's failure to pay NORDEN is a breach of the charter party.

15.    The charter party provides that the contract is subject to US law and that disputes arising under the charter party are subject to resolution by arbitration at New York.  Plaintiff NORDEN specifically reserves its right to arbitrate the substantive matters herein before a panel of arbitrators (or before a single arbitrator if agreement by the parties is so obtained) at New York.

16.    Upon information and belief, and after investigation, Defendant GLOBAL cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant GLOBAL (collectively hereinafter, "ASSETS"), including but not limited to ASSETS in its name as may be held, received, or transferred in its own name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking institutions including but not limited to Credit Agricole (Suisse) S.A., Bank of America, Bank of New York, Citibank and/or other institutions or such other garnishees to be named.

17.    The total amount of Plaintiff NORDEN's claim which is sought to be attached pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims by NORDEN against GLOBAL includes:

(i)    Unpaid freight in the sum of $68,062.10 which GLOBAL has improperly failed to pay;

(ii)    Unpaid future demurrage in the sum of $206,237.20 which GLOBAL

has improperly failed to pay;

(iii)   Estimated attorneys' fees and disbursements, together with the costs of the arbitration, including arbitrators' fees, in the amount of $50,000.00 which may be recoverable in arbitration;

(iv)   Interest at the rate of 6% per annum, which is recoverable in arbitration, estimated to the time of entry of judgment in two years of $32,915.88;

for a total claim amount sought to be attached of $357,215.09.

WHEREFORE, Plaintiff NORDEN prays:

a.   That process in due form of law according to the practice of this Court issue against Defendant GLOBAL, citing it to appear and answer the foregoing, failing which a default will be taken against it for the principal amount of the claim of $274,299.21 plus interest, costs and attorneys fees;

b.   That Defendant GLOBAL be compelled to arbitrate the substantive matters of this dispute pursuant to the terms of the charter party;

c.   That if Defendant GLOBAL cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendant GLOBAL, up to and including the claim of **$357,215.09** be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-

freights, charter hire and/or sub-charter hire, of, belonging to, due or being transferred from or for the benefit of Defendant GLOBAL (collectively hereinafter, "ASSETS"), including but not limited to such ASSETS as may be held, received, or transferred in its own name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking institutions including but not limited to Credit Agricole (Suisse) S.A., Bank of America, Bank of New York, Citibank and/or other institutions or such other garnishees to be named;

d.      That Plaintiff NORDEN have such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
        August 16, 2005

                            FREEHILL HOGAN & MAHAR, LLP
                            Attorneys for Plaintiff
                            DS NORDEN A/S

        By:     _____
                Michael E. Unger (MU 0045)
                Lawrence J. Kahn (LK 5215)
                80 Pine Street
                New York, NY 10005
                (212) 425-1900
                (212) 425-1901 fax

## ATTORNEY VERIFICATION

State of New York )
                 ) ss.:
County of New York )

       MICHAEL E. UNGER, being duly sworn, deposes and says as follows:

       1.     I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

       2.     The sources of my information and the grounds for my belief are communications from our client and documents provided by our client regarding the claim.

       3.     The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

_____
Michael E. Unger

Sworn to before me this
16th day of August 2005

_____
Notary Public

ROBERT G. RIDENOUR, JR.
Notary Public, State of New York
No. 01RI5008838
Qualified in Richmond County
Commission Expires March 1, 2007

E X H I B I T  1

COPY

Adopted by
the Documentary Committee of the General
Council of British Shipping, London
and the Documentary Committee of The Japan
Shipping Exchange, Inc., Tokyo

Copyright, published by The Baltic
and International Maritime
Conference (BIMCO), Copenhagen

Printed in U.S.A. for Association of Ship Brokers and Agents
(U.S.A.) Inc. (ASBA), New York, by authority of the Baltic
and International Maritime Conference (BIMCO), Copenhagen.

**RECOMMENDED**
THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE
UNIFORM GENERAL CHARTER (AS REVISED 1922 and 1976)
INCLUDING "F.I.O." ALTERNATIVE, ETC.
(To be used for trades for which no approved form is in force)
CODE NAME: "G E N C O N"

Part I

| | |
|---|---|
| 1  Shipbroker | 2  Place and date<br>Tarrytown, New York April 15th, 2005. |
| 3  Owners/Place of business (Cl. 1)<br>D/S NORDEN A/S, Copenhagen, Denmark as Owners | 4  Charterers/Place of business (Cl. 1)<br>GLOBAL INFRASTRUCTURE HOLDINGS, LTD.<br>LOB 16 – 411<br>JEBEL ALI FREE ZONE<br>DUBAI, UAE |
| 5  Vessel's name (Cl. 1)<br>M/V "BONASIA" or Substitute | 6  GRT/NRT (Cl. 1) |
| 7  Deadweight cargo carrying capacity in tons (abt.) (Cl. 1) | 8  Present position (Cl. 1) |
| 9  Expected ready to load (abt.) (Cl. 1) | |
| 10  Loading port or place (Cl. 1)<br>Pier 6; Norfolk, VA.<br>Owners to satisfy themselves with any<br>restrictions such as LOA/Beam/Draft, etc. | 11  Discharging port or place (Cl. 1)  Berth 11 or 12, Ploce, Croatia.<br>LOA 240 M/Draft 12.5 M/Beam 33-All without<br>guarantee.  Owners to satisfy themselves with<br>restrictions such as LOA/Beam/Draft, etc. |

12  Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)

50,000 metric tons 10% more or less 'one grade' of coal in bulk.
- Owners/Master to satisfy themselves on restrictions of loadable quantities with respect to load
and discharge port/terminal restrictions.

| | |
|---|---|
| 13  Freight rate (also state if payable on delivered or intaken quantity) (Cl. 1)<br><br>See Clause 57. | 14  Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)<br><br>See Clause 23. |
| 15  Loading and discharging costs (state alternative (a) or (b) of Cl. 5; also indicate if vessel is gearless) (Cl. 5)<br>Free in stowed trimmed free out spout trimmed<br>as per customs of trade. | 16  Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only) (Cl. 6)<br>a) Laytime for loading<br>See Clause 18. |
| 17  Shippers (state name and address) (Cl. 6)<br><br>As per Box 4. | b) Laytime for discharging<br>See Clause 18. |
| | c) Total laytime for loading and discharging<br>See Clause 18. |
| 18  Demurrage rate (loading and discharging) (Cl. 7)<br>See Clause 18. | 19  Cancelling date (Cl. 10)<br>See Clause 57. |
| 20  Brokerage commission and to whom payable (Cl. 14) | |

21  Additional clauses covering special provisions, if agreed

The attached Rider Clauses number 1 to 64 inclusive and Gencon Charter Party I and II are deemed
to be fully incorporated in this Charter Party and to form part of same.

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II. In the event of a conflict of
conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners) | Signature (Charterers) |
|---|---|
| | |

PART II

"Gencon" Charter (As Revised 1922 and 1976)

Including "F I O" Alternative etc.

full and complete

in Owner's option

**1.** It is agreed between the party mentioned in Box 3 as Owners of the steamer or motor-vessel named in Box 5, of the gross/net Register tons indicated in Box 6 and carrying about the number of tons of deadweight cargo stated in Box 7, now in position as stated in Box 8 and expected ready to load under this Charter about the date indicated in Box 9, and the party mentioned as Charterers in Box 4 that:

The said Vessel shall proceed to the loading port or place stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo (if shipment of deck cargo agreed same to be at Charterers' risk) as stated in Box 12 (Charterers to provide all mats and/or wood for dunnage and any separations required, the Owners allowing the use of any dunnage wood on board if required) which the Charterers bind themselves to ship, and being so loaded the vessel shall proceed to the discharging port or place stated in Box 11 as ordered on signing Bills of Lading or so near thereto as she may safely get and lie always afloat and there deliver the cargo on being paid freight on delivered or intaken quantity as indicated in Box 13 at the rate stated in Box 13.

**2. Owners' Responsibility Clause**
Owners only to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by the improper or negligent stowage of the goods (unless stowage performed by shippers/Charterers or their stevedores or servants) or by personal want of due diligence on the part of the Owners or their Manager to make the vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager.

And the Owners are responsible for no loss or damage or delay arising from any other cause whatsoever, even from the neglect or default of the Captain or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this clause, be responsible, or from unseaworthiness of the vessel on loading or commencement of the voyage or at any time whatsoever. Damage caused by contact with or leakage, smell or evaporation from other goods or by the inflammable or explosive nature or insufficient package of other goods not to be considered as caused by improper or negligent stowage, even if in fact so caused.

**3. Deviation Clause**
The vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots, to tow and/or assist vessels in all situations and also to deviate for the purpose of saving life and/or property.

**4. Payment of Freight**
The freight to be paid in the manner prescribed in Box 14 in cash without discount on delivery of the cargo at mean rate of exchange ruling on day or days of payment, the receivers of the cargo being bound to pay freight on account during delivery, if required by Captain or Owners.

Cash for vessel's ordinary disbursements at port of loading to be advanced by Charterers if required at highest current rate of exchange, subject to two per cent. to cover insurance and other expenses.

**5. Loading/Discharging Costs** See Clause 18
*(a) Gross Terms*
The cargo to be brought alongside in such a manner as to enable vessel to take the goods with her own tackle. Charterers to procure and pay the necessary men on shore or on board the lighters to do the work there, vessel only heaving the cargo on board. If the loading takes place by elevator, cargo to be put free in vessel's holds, Owners only paying trimming expenses. Any pieces and/or packages of cargo over two ton weight, shall be loaded, stowed and discharged by Charterers at their risk and expense. The cargo to be received by Merchants at their risk and expense alongside the vessel not beyond the reach of her tackle.

*(b) F.i.o. and free stowed/trimmed*
The cargo shall be brought into hold, loaded, stowed and/or trimmed and taken from the hold and discharged by the Charterers or their Agents, free of any risk, liability and expense whatsoever to the Owners.

The Owners shall provide winches, motive power and winchmen from the Crew if requested and permitted; if not, the Charterers shall provide and pay for winchmen from shore and/or cranes, if any, (this provision shall not apply if vessel is gearless and stated as such in Box 24).

**6. Laytime** See Clause 10
*(a) Separate laytime for loading and discharging*
The cargo shall be loaded within the number of running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count. The cargo shall be discharged within the number of running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.

*(b) Total laytime for loading and discharging*
The cargo shall be loaded and discharged within the number of total running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted unless used, in which event time actually used shall count.

*(c) Commencement of laytime (loading and discharging)*
Laytime for loading and discharging shall commence at 1 p.m. if notice of readiness is given before noon, and at 6 a.m. next working day if notice given during office hours after noon. Notice at loading port to be given to the Shippers named in Box 17.

Time actually used before commencement of laytime shall count. Time lost in waiting for berth to count as loading or discharging time, as the case may be.

**7. Demurrage**
Ten running days on demurrage at the rate stated in Box 18 per day or pro rata for any part of a day, payable day by day, to be allowed Merchants altogether at ports of loading and discharging.

**8. Lien Clause**
Owners shall have a lien on the cargo for freight, dead-freight, demurrage and damages for detention. Charterers shall remain responsible for deadfreight and demurrage (including damages for detention), incurred at port of loading. Charterers shall also remain responsible for freight and demurrage (including damages for detention) incurred at port of discharge, but only to such extent as the Owners have been unable to obtain payment thereof by exercising the lien on the cargo.

where detention caused by Charterer

**9. Bills of Lading**
The Captain to sign Bills of Lading at such rate of freight as presented without prejudice to this Charterparty, but should the freight by Bills of Lading amount to less than the total chartered freight the difference to be paid to the Captain in cash on signing Bills of Lading.

according to Mate's receipts

**10. Cancelling Clause**
Should the vessel not be ready to load (whether in berth or not) on or before the date indicated in Box 19, Charterers have the option of cancelling this contract, such option to be declared, if demanded, at least 48 hours before vessel's expected arrival at port of loading. Should the vessel be delayed on account of average or otherwise, Charterers to be informed as soon as possible, and if the vessel is delayed for more than 10 days after the day she is stated to be ready to load, Charterers have the option of cancelling this contract, unless a cancelling date has been agreed upon.

**11. General Average**
General average to be settled according to York-Antwerp Rules, 1974. Proprietor of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners' servants (see clause 2).

in New York

**12. Indemnity**
Indemnity for non-performance of this Charterparty, proved damages, not exceeding estimated amount of freight.

**13. Agency** See Clause 35

New York — American Law (See Clause 31)

**14. Brokerage**
A brokerage commission at the rate stated in Box 20 on the freight earned is due to the party mentioned in Box 21.

In case of non-execution at least ⅓ of the brokerage on the estimated amount of freight and dead-freight to be paid by the Owners to the Brokers as indemnity for the latter's expenses and work. In case of more voyages the amount of indemnity to be mutually agreed.

deadfreight and demurrage

**15. General Strike Clause**
Neither Charterers nor Owners shall be responsible for the consequences of any strikes or lock-outs preventing or delaying the fulfilment of any obligations under this contract.

If there is a strike or lock-out affecting the loading of the cargo, or any part of it, when vessel is ready to proceed from her last port or at any time during the voyage to the port or ports of loading or thereafter, Captain or Owners may ask Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out. Unless Charterers have given such declaration in writing (by telegram, if necessary) within 24 hours, Owners shall have the option of cancelling this contract. If part cargo has already been loaded, Owners must proceed with same, (freight payable on loaded quantity only) having liberty to complete with other cargo on the way for their own account.

If there is a strike or lock-out affecting the discharge of the cargo on or after vessel's arrival at or off port of discharge and same has not been settled within 48 hours, Receivers shall have the option of keeping vessel waiting until such strike or lock-out is at an end against paying half demurrage after expiration of the time provided for discharging, or of ordering the vessel to a safe port where she can safely discharge without risk of being detained by strike or lock-out. Such orders to be given within 48 hours after Captain or Owners have given notice to Charterers of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions of this Charterparty and of the Bill of Lading shall apply and vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

**16. War Risks ("Voywar 1950")**
(1) If any port of loading or of discharge be blockaded, or (2) If, owing to any war, hostilities, warlike operations, civil war, civil commotion or revolution, entry to any such port of loading or of discharge or the loading or discharge of cargo at any such port be considered by the Master or Owners in his or their discretion dangerous or prohibited, or (3) if by reason of any of the causes enumerated in this Clause the Vessel cannot safely proceed to and enter and load or discharge cargo at any such port, the Master or Owners may require the cargo to be loaded or discharged at any other safe port of loading or of discharge.

(4) If in consequence of any of the events enumerated in this Clause the Vessel is prevented from proceeding to the port of loading or discharge, the Charter shall be null and void.

(2) The Master shall not be required to load cargo or to continue loading or to proceed on or to sign Bills of Lading for any adventure on which or any port at which it appears that the Vessel her Master and crew or her cargo will be subjected to war risks. In the event of the exercise by the Master of his right under this Clause after part of full cargo has been loaded, the Master shall be at liberty either to discharge such cargo at the loading port or to proceed therewith. In the latter case the Vessel shall have liberty to carry other cargo for Owners' benefit and accordingly to proceed to and load or discharge such other cargo at any other port or ports whatsoever, backwards or forwards, although in a contrary direction to or out of or beyond the ordinary route. In the event of the Master electing to proceed with part cargo under this Clause freight shall in any case be payable on the quantity delivered.

(3) If at the time the Master elects to proceed with part or full cargo under this Clause, or after the Vessel has left the loading port, or the

COPY

C O P Y

PART II
"Gencon" Charter (As Revised 1922 and 1976)
Including "F.I.O." Alternative, etc

tion of the loading port, if more than one, it appears that during 205
performance of the contract will subject the Vessel, her Master, 206
crew or her cargo, to war risks, the cargo shall be discharged, or if 207
the discharge has been commenced shall be completed, at any safe 308
port in vicinity of the port of discharge as may be ordered by the 209
Charterers. If no such orders shall be received from the Charterers 210
within 48 hours after the Owners have despatched a request by 211
telegram to the Charterers for the nomination of a substitute discharg- 212
ing port, the Owners shall be at liberty to discharge the cargo 213
at any safe port which they may, in their discretion, decide on and such 214
discharge shall be deemed to be due fulfilment of the contract of 215
affreightment. In the event of cargo being discharged at any such 216
other port, the Owners shall be entitled to freight as if the discharge 217
had been effected at the port or ports named in the Bill(s) of Lading 218
or to which the Vessel may have been ordered pursuant thereto 219

(5) (a) The Vessel shall have liberty to comply with any directions 220
or recommendations as to loading, departure, arrival, routes, ports 221
of call, stoppages, destination, zones, waters, discharge, delivery or 222
in any other wise whatsoever (including any direction or recom- 223
mendation not to go to the port of destination or to delay proceeding 224
thereto or to proceed to some other port) given by any Government or 225
by any belligerent or by any organised body engaged in civil war, 226
hostilities or warlike operations or by any person or body acting or 227
purporting to act as or with the authority of any Government or 228
belligerent or of any such organised body or by any committee or 229
person having under the terms of the war risks insurance on the 230
Vessel, the right to give any such directions or recommendations. If, 231
by reason of or in compliance with any such direction or recom- 232
mendation, anything is done or is not done, such shall not be deemed 233
a deviation 234

(b) If, by reason of or in compliance with any such directions or re- 235
commendations, the Vessel does not proceed to the port or ports 236
named in the Bill(s) of Lading or to which she may have been 237
ordered pursuant thereto, the Vessel may proceed to any port as 238
directed or recommended or to any safe port which the Owners in 239
their discretion may decide on and there discharge the cargo. Such 240
discharge shall be deemed to be due fulfilment of the contract of 241
affreightment and the Owners shall be entitled to freight as if the 242
discharge had been effected at the port or ports named in the Bill(s) 243
of Lading or to which the Vessel may have been ordered pursuant 244
thereto 245

(6) All extra expenses (including insurance costs) involved in discharg- 246
ing cargo at the loading port or in discharging the cargo as 247
provided in Clauses 4 and 5 (b) hereof shall be paid 248
by the Charterers and/or cargo owners, and the Owners shall have 249
a lien on the cargo for all moneys due under these Clauses 250

17 GENERAL ICE CLAUSE                                                    251
   Port of loading                                                      252

(a) In the event of the loading port being inaccessible by reason of 253
ice when vessel is ready to proceed from her last port or at any 254
time during the voyage or on vessel's arrival or in case ice sets in 255
after vessel's arrival, the Captain for fear of being frozen in is at 256
liberty to leave without cargo, and this Charter shall be null and 257
void.                                                                   258

(b) If during loading the Captain, for fear of vessel being frozen in, 259
deems it advisable to leave, he has liberty to do so with what cargo 260
he has on board and to proceed to any other port or ports with 261
option of completing cargo for Owners' benefit for any port or ports 262
including port of discharge. Any part cargo thus loaded under this 263
Charter to be forwarded to destination at vessel's expense but 264
against payment of freight, provided that no extra expenses be 265
thereby caused to the Receivers, freight being paid on quantity 266
delivered (in proportion if lumpsum), all other conditions as per 267
Charter,                                                                268

(c) In case of more than one loading port, and if one or more of 269
the ports are closed by ice, the Captain or Owners to be at liberty 270
either to load the part cargo at the open port and fill up elsewhere 271
for their own account or to declare the Charter 272
null and void unless Charterers agree to load full cargo at the open 273
port.                                                                   274

(d) This Ice Clause not to apply in the Spring.                         275

Port of discharge                                                       276

(a) Should ice (except in the Spring) prevent vessel from reaching 277
port of discharge Receivers shall have the option of keeping vessel 378
waiting until the re-opening of navigation and paying demurrage, or 379
of ordering the vessel to a safe and immediately accessible port 280
where she can safely discharge without risk of detention by ice. 281
Such orders to be given within 48 hours after Captain or Owners 282
have given notice to Charterers of the impossibility of reaching port 283
of destination.                                                         28c

(b) If during discharging the Captain for fear of vessel being frozen 285
in deems it advisable to leave, he has liberty to do so with what 286
cargo he has on board and to proceed to the nearest accessible 387
port where she can safely discharge.                                    288

(c) On delivery of the cargo at such port, all conditions of the Bill 289
of Lading shall apply and vessel shall receive the same freight as 290
if she had discharged at the original port of destination, except that if 291
the distance of the substituted port exceeds 100 nautical miles, the 292
freight on the cargo delivered at the substituted port to be increased 293
in proportion                                                           194

COPY

RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED
APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS
OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

CLAUSE 18: LOADING/DISCHARGING TERMS/DEMURRAGE

LOADING TERMS:
The cargo is to be loaded into the vessel at the rate of 30,000
metric tons per weather working day of 24 consecutive hours,
Sundays and Holidays included, excluding Super/Stevedore Holidays
and draft surveys. Time from 17:00 hours on the day preceding a
Stevedore Holiday to 08:00 hours on the next working day not to
count unless used, when actual time used to count.

Laytime for loading shall commence 12 hours, under application of
time exempted as above, after valid Notice of Readiness has been
given in writing, or by radio, fax or telex to shippers or to
agents at port of loading unless sooner commenced, in which case
actual time used is to count. Such notice may be given at any time
of the day or night, Sundays and Holidays included, but not on
Holidays or prior to 09.00 a.m. on March 15th, after vessel has
arrived at loading port, whether in berth or not, whether in port
or not, whether in custom clearance or not, whether in free in
pratique or not, provided the same is subsequently granted. Actual
time used in obtaining free pratique and customs clearance shall
not count as laytime. If for any reason the vessel is not ready to
load Charterer's cargo due to default of the vessel, then all such
delays are not to count as laytime.

Upon tendering Notice of Readiness the vessel's holds shall be
clean, dry to Shipper's/Charterer's satisfaction and ready to
receive the cargo. In the event of a dispute a jointly appointed
independent surveyor will be appointed whose decision to be final
and binding on Shippers/Charterers/Owners.

Before tendering Notice of Readiness the vessel to be in everyway
suitable for loading, receiving and stowing of the cargo. Hatch
beams removed derricks/raised/cranes set and ready to work if
required and permitted by port regulations, failing same Charterers
can refuse to accept Notice of Readiness tendered.

DISCHARGING TERMS:

The cargo is to be discharged at the rate of 10,000 metric tons per
weather working day of 24 consecutive hours Saturday noon, Sundays
and Holidays excluded, provided the vessel can deliver the cargo at

1

COPY

RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED
APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS
OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

## CLAUSE 18 - CONTINUED

the above discharge rates, and excluding draft check time. Time
from noon Saturday or 12 hours on the day preceding a Holiday to
08.00 a.m. Monday or on the next working day not to count unless
used, when actual time used to count.

Laytime shall commence 12 hours, under application of time exempted
as above, after valid Notice of Readiness has been given in
writing, or by radio, fax or telex to Receivers or to agents,
unless sooner commenced, in which case such time is to count.
Notice of Readiness to be tendered on working days between 09.00
hours to 16.00 hours Monday to Friday, and on Saturday between
09.00 hours to 12.00 hours, after the vessel has arrived at the
discharging port, whether in berth or not, whether in port or not,
whether in custom clearance or not, whether in free in pratique or
not, provided the same is subsequently granted. Actual time in
obtaining free pratique and customs clearance shall not count as
laytime. If for any reason the vessel is not ready to discharge
Charterer's cargo due to default of the vessel, then all such
delays are not count as laytime.

**Demurrage**: USD 39,500.00 per day or pro-rata/half despatch laytime
saved at both ends. Laytime is non-reversible.

## CLAUSE 19

Stevedores, although appointed and paid for by Shippers/Charterers/
Receivers are to be considered Owners' servants and shall load,
stow and discharge the cargo in accordance with Master's
instructions, directions, supervision and under his responsibility.
Shippers/Charterers/Receivers not to be responsible for proper
stowage. Stevedore damage, if any, to be settled directly between
Owners and stevedores without Charterers' interference.

Master to notify stevedores/Agents/Shippers/Receivers of damages,
if any, in writing, immediately after occurrence, in case of hidden
damages latest upon detection but always prior to sailing
load/discharge port respectfully, otherwise stevedores not to be
held liable.

2

COPY

RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

### CLAUSE 19 - CONTINUED

If requested by the Owners Charterers to actively assist with all possible efforts that Stevedores settle any damage for which Stevedores are liable.

### CLAUSE 20

At loadport Notice of Readiness (NOR) shall be given to Charterers/ Shippers.

**Hatches**
Opening and closing of hatches always to be performed by the ship's crew, provided permitted by local regulations at both loading and discharging ports and in Owner's time and account. Master to arrange closing of hatches if weather is wet or threatening and if ordered by port regulations/practice.

### CLAUSE 21: FORK LIFT TRUCK STOW

Shippers/Charterers/Receivers to have the option of using forklifts during loading/discharging operations and Owners to allow same in all compartments and warrant that the vessel is in every respect suitable for forklift operations up to vessel's permissible tanktop strength.

No cargo to be loaded into compartments obstructed by stanchions, posts or other obstacles which are not easily accessible to cranes/derricks or forklift operations or blocked by other part cargoes.

### CLAUSE 22

Charterers have free use of all equipment and dunnage/lashing materials on board.

The vessel shall give always free use of winches/derricks or cranes up to their lifting capacity and supply free of charge sufficient power and runners as on board and also to supply free to charge sufficient power to drive all winches/derricks/cranes simultaneously day and night, if when and where required.

3

COPY

RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED
APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS
OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

### CLAUSE 22 – CONTINUED

Vessel to provide sufficient lights as onboard on deck and in holds
for night work if/when required, free of charge. Shorehands to be
employed at Shippers/Receivers risk and time.

If local regulations do not permit crew to open and/or close
hatches, then same to be for the Charterers' account.

Any time lost by reason of defective gear and equipment/breakdown
of same to be added to laytime pro-rata. Stevedore standby charge
and forklifts affected up to the end of the shift unless shore
equipment to be employed during such breakdown periods to be of
Owner's account.

Charterers however to advise costs involved and to secure Owners'
prior approval before engaging shore equipment. Extra costs, if
any, to be properly supported by evidencing vouchers, failing which
Owners are not obliged to accept settlement of same.

### CLAUSE 23: FREIGHT PAYMENT

Ninety five percent (95%) freight to be paid on Bill of Lading
quantity within five (5) banking days after completion of loading
and signing/releasing Clean on Board Bills of Lading, to be marked
"Freight Payable as per Charter Party dated April 15th, 2005" to
Owner's designated Bank account.

Bills of Lading to incorporate all terms, conditions, liberties and
exceptions including the lien and arbitration clauses of Charter
Party dated April 15th, 2005.

Balance of freight is to be calculated on the basis of Bill of
Lading quantity and is to be paid after completion of discharge
together with any undisputed demurrage/despatch money at loading/
discharging port (s) within 30 days after completion of discharge
Respectively to:
Nordea Bank Denmark A/S, Strandgade 3, 0900 Copenhagen C
Credit USD Account no 5005 553795
In Favour of: Dampskibsselskabet D/S Norden A/S
Swift Code: NDEADKKK
Iban Code: DK7920005005553795

4

COPY

RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

**CLAUSE 23 – CONTINUED**

New York Corresponding Bank:
JP Morgan Chase Manhattan Bank
New York, N. Y.
Swift Code: CHASUS33
Ref: Norden/Global M/V "BONASIA" or Substitute
C/P dated 4/15/2005.

Full freight deemed earned on shipment of cargo discountless and non-returnable ship and/or cargo lost or not lost.

In the absence of Original Bills of Lading at discharge port Owners/ Master undertake to discharge and release the cargo against Charterers single Letter of Indemnity (LOI) in Owners' P and I Club standard wording, but without any Bank guarantee and/or endorsement. The Letter of Indemnity is to be countersigned by the cargo's Receivers.

**CLAUSE 24**

Any taxes, dues, and charges on cargo will be for Charterer's/ Shipper's account, but it is understood that Ploce Port dues (which are about 50 cents per metric ton of cargo) are normal cost and to be for Owners' account. Wharfage at discharge port on cargo is for account of Charterers/Receivers.

Any taxes, insurance, dues and charges on the ship including freight tax, if any for Owner's account, including agency fee. Wharfage on vessel is for the Owners' account.

**CLAUSE 25**

At loadport and discharge port Shippers/Receivers/Charterers to have free use of all gears and dunnage/lashing materials on board. Dunnage supplied, if any, for securing cargo shall become ship's property unless being specifically required by Receivers.

**CLAUSE 26**

In the event of a boycott or other difficulty arising due to vessel's flag, or labour boycott or any other discrimination against

5

COPY

RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED
APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS
OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

**CLAUSE 26 — CONTINUED**

the ship due to her registry and/or crew, time lost and all
consequences to be for Owners' account, and time not to count if
boycott/difficulty affects the loading/stowing/securing/discharging.
If loading/discharging of the vessel is adversely affected due to
any of the aforementioned reasons and if vessel is already on
demurrage, then demurrage to be suspended for period during which
loading/discharging cannot be carried out.

Acts of God, public enemies, restraints or rulers or established
authorities, rebellion, tumults, insurrections, political
disturbances, revolutions, riots, war, civil commotion, ice, fire,
flood, droughts, epidemics, quarantine, intervention of authorities,
all and every dangers and accidents of the seas, rivers, canals and
navigations of whatever kind and nature, stoppages at the mills or
on the railroads or seaboard and other unavoidable hindrances
affecting the loading, discharge, delivery or receiving of the cargo
during this voyage are excepted and neither Charterers nor
Shippers/Receivers shall be liable for any loss or damage resulting
from any such excepted causes.

If loading/discharging has commenced time lost by reason thereof
shall not count as laytime unless on demurrage. Owners to be fully
responsible for any consequences arising from disputes between them
and /or authorities and/or ship's crew/command.

**CLAUSE 27**

Officers'/Crew's overtime always for Owner's account.

**CLAUSE 28**

Immediately after shipment Owners/Master to provide:

a.    Master's Letter of Authority permitting Bills of Lading to be
      signed by Carriers or Agents.

b.    Certificate confirming satisfactory stowage and that no damage
      has been incurred by the vessel during loading operations, to
      be signed by Master.

6

COPY

RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

CLAUSE 29

Master/Owners' Agents to sign Statement of Facts for loading and discharging marking their reservations if believed to be incorrect.

CLAUSE 30

The ship to give notice on fixing 1 day and 12 hours ETA notices at load port to:

Loadport Agents as follows:

ANDERS WILLIAMS SHIP AGENCY, INC.
201 E. City Hall Avenue
Norfolk, Virginia 23510
Tel: 757-457-8347 / Fax: 757-625-7794
E-mail: Sharon.Baines@AndersWilliams.com

The ship to give on 5/4/3/2/1 days and 12 hours ETA at discharge port Agents.

Discharge port agents as follows:

JADROAGENT, International Shipping & Freight Agency Ltd.
Trg kralja Tomislava 20
20340 Ploce, Croatia
Tel: 385-20-679-964
Fax: 385-20-670-130
Telex: 26239 jadrag rh
E-mail: agencija-ploce@jadroagent.htnet.hr

Owners will keep Charterers closely posted of vessel's movement after loading Charterer's cargo.

CLAUSE 31

Any dispute arising out of this Contract shall, unless the parties agree forthwith on a single arbitrator, be referred to the final arbitrament in New York of two arbitrators who shall be commercial men carrying on business in New York, one to be appointed by each of the parties with power to such arbitrators to appoint an umpire whose decision shall be final and binding upon both parties.

7

COPY

RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED
APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS
OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

**CLAUSE 32**

Charter Party terms shall always supercede Bills of Lading terms
whenever contradictory, except in so far as Charter Party terms
effect the Consignee where Bills of Lading terms are paramount.

**CLAUSE 33**

The following clauses are to apply to this Charter Party and Bills
of Lading issued hereunder.

VOYWAR 93 — Is deemed to be inserted and forms part of this C/P.
New Jason Clause
Both to Blame Collision Clause
Club Bunker Clause
Chamber of Shipping Clause Paramount.
BIMCO ISPS Voyage Clause

**CLAUSE 34**

Owners to keep Charterers/Agents well advised of any change/ETA at
load/discharge port (refer notices Clause 30).

**CLAUSE 35**

Charterer's agents at both ends.
Owners to ensure sufficient funds are sent to Agents for pro-forma
disbursements prior to vessel's arrival.

**CLAUSE 36**

This fixture to remain fully private and confidential amongst
brokers/Owners and Charterers involved.

**CLAUSE 37**

Deleted

**CLAUSE 38**

Deleted

8

COPY

RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED
APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS
OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

CLAUSE 39

Owners to have the right of sub-letting the whole part of this
Charter, but shall remain responsible for the due fulfillment
thereof.

CLAUSE 40

Deleted

CLAUSE 41

Owners to provide Charterers with intended schedule/itinerary on
sailing last loadport.

CLAUSE 42 – (N/A to this trade)

[The intended stowage plan should be supplied 3 days before vessel's
arrival loadport.]

CLAUSE 43

Strictly no trans-shipment.
Strictly under deck stow only.

CLAUSE 44

Any expense resulting from vessel exceeding draft at load and
discharge port to be responsibility of Owners.

CLAUSE 45

Time shifting from waiting place/anchorage to loading/discharging
berth not to count even if the vessel is on demurrage.

If shifting at loadport/discharge port from one berth to another or
from waiting buoy or anchorage to safe buoy or anchorage within
harbour limits, is necessary due to vessel's overdraft, then all
shifting time not to count as laytime, where applicable.

9

COPY

RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED
APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS
OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

**CLAUSE 47 CONTINUED**

- Vessel has unobstructed holds suitable for grab and mechanical
  equipment/ payloader discharge, and is a ISM/ISPS certified and
  ITF or equivalent.

- Any overage premium for vessel's in excess of 20 years of age is
  for Owner's account but upto maximum USD 10,000.00 against
  presentation of proper vouchers.

**CLAUSE 48**

Charterers to deliver free in and out spout trimmed, terms agreed in
this Charter Party.

**CLAUSE 49**

Deleted

**CLAUSE 50**

Owners have the option to substitute nominated vessel by other, but
Owners must name final performing vessel minimum 5 days prior to the
first day of the laydays with about same characteristics, same
loading capacity within the agreed laydays after due notification of
substituting vessel.

Owners to advise all details of the nominated vessel including:
name, flag, year built, LOA, Beam, DWT, expect arrival and sailing
draft, GRT, NRT, Class, P and I Club, service speed, ETA loading
port and estimated cargo intake.

Nomination of vessel subject to Charterers' reconfirmation within 1
business day after same has been presented in full to Charterers
prior to 3.30 p.m. Monday – Friday (Holidays excluded) New York
time.

**CLAUSE 51**

Deleted

11

COPY

RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED
APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS
OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

**CLAUSE 46**

Deleted

**CLAUSE 47: VESSEL**

**M/V BONASIA**
Built:      2001
Flag:       Switzerland
Main Particulars:
Deadweight summer:  46,509 MT
Draft summer:       11.62 Meters
TPC:                51.5
International Tonnage Certificate
GRT/NRT:            27,011/16,011
Length Overall:     189.8 Meters
Beam:               31 Meters
Cargo Handling Equipment:
Cranes:             4 X 30 Electro-Hydraulic
Grabs:              4 X 10 Cubic Meters
Hatches/Holds:      5/5
Grain capacity of cargo holds in total: 59,820 Cubic Meters
Bale capacity of cargo holds in total: 57,237 Cubic Meters
Speed and Consumption
Main Engine:
Speed (ballast/laden): 14.5/14.5 Knots
Ballast:            23 MT IFO 380
Laden:              27 MT IFO 380
Auxiliary Engines:
At Sea:             Port working: 5.0 MT IFO + 0.3 MDO
                    Port idle: 2.5 MT IFO 380 + 0.3 MDO
All details given in good faith and without guarantee.
Vessel may consume small amount of MDO in narrow waters, canals, etc.

- Open Delaware River April 27/28. ETA Norfolk April 30/May 1, 2005.

Owners warrant vessel:
- Fully suitable for performing the voyage/trade and as per her
  description clause.

- Single deck bulkcarrier with steel floors, trimming plates, fully
  suitable for the carriage of Coal in Bulk.

10

COPY

RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED
APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS
OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

## CLAUSE 52

Opening and closing of hatches always to be performed by the ship's
crew, provided permitted by local regulations, same shall be done in
Owner's time and for Owner's account.

Rigging of cargo shall be always be performed by the ship's crew,
provided permitted by local regulations, same shall be done in
Owner's time and for Owner's account.

The Master to arrange for the closing of hatches in case of wet of
threatening weather perilous to the cargo, unless otherwise mutually
agreed between Owners/Charterers and Shippers, respectively
Receivers.

In case the loading/discharging operations cannot commence because
the stevedores are not allowed/able to board the ship, all
consequential costs arising therefore to be for Owner's account.

Hatch covers, sweat battens and any other similar equipment to be
stowed in such a way that they do not interfere with
loading/discharging operations. Hatch covers to be guaranteed by
Owners to be watertight at all times during the voyage and Owners to
provide, if required by Charterers, copy of vessel's current
classification certificate and Owners will maintain such condition
throughout this Charter Party.

If any of the aforesaid tasks are not permitted by local regulations
to be performed by vessel crew then same to be for Charterers'
account.

## CLAUSE 53

Owners warrant that vessel's arrival draft, gear, equipment shall
comply and be fully certificated (certificates on board) with the
official requirements and regulations of load/discharge ports and
that vessel is fully insured.

Throughout the period of the Charter the vessel will have on board
all necessary certificates to enable the vessel and crew to carry
the cargoes and trade within the trading limits allowed under this
Charter. Any consequential costs arising from non-compliance with
these requirements will be for Owner's account.

12

COPY

<u>RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED</u>
<u>APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS</u>
<u>OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS</u>

### CLAUSE 54

Owners warrant carrying vessel will not be on last voyage or break-up at destination voyage and to provide Charters with certificate to this effect.

### CLAUSE 55

Deleted

### CLAUSE 56

Owners warrant that the performing ship is staunch/strong and is in every way fitted for the voyage and to carry "coal in bulk" cargoes, will maintain highest class Lloyds Register or equivalent, P and I Club membership and exercise utmost due diligence toward her seaworthiness throughout the duration of this Contract, will not be sold and change ownership and will not drydock unless in a case of emergency affecting the ship's seaworthiness and that specifically, ventilators/hatches/covers/coamings/gaskets are n perfect order and conditions.

If required the vessel shall furnish a certified calibration scale for all tanks including fore and aft peaks, double bottom tanks and deeptanks, if any. Plimsoll marks amidships and draft marks on both port and starboard sides to be clearly cut and marked on shell plating and Master to certify correctness of same.

### CLAUSE 57: FREIGHT / LAYCAN

Freight: USD 30.00 per metric ton free in and out spout trimmed, basis on Bill of Lading weight.

Laycan: April 24th – May 3rd, 2005. Vessel is expected to be ready to load on commencement of laydays all going well, weather permitted, unforeseen circumstances excepted.

13

COPY

RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED
APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS
OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

**CLAUSE 58**

Deleted

**CLAUSE 59**

Deleted

**CLAUSE 60**

Deleted

**CLAUSE 61**

Deleted

**CLAUSE 62: BIMCO ISPS VOYAGE CLAUSE**

(A) (i) From the date of coming into force of the International
Code for the Security of Ships and of Port Facilities and the
relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation
to the Vessel, the Owners shall procure that both the Vessel and
"the Company" (as defined by the ISPS Code) shall comply with the
requirements of the ISPS Code relating to the Vessel and the
Company. Upon request the Owners shall provide a copy of the
relevant International Ship Security Certificate (or the Interim
International Ship Security Certificate) to the Charterers. The
Owners shall provide the Charterers with the full style contact
details of the Company Security Officer (CSO).

(ii) Except as otherwise provided in this Charter Party, loss,
damage, expense or delay, excluding consequential loss, caused by
failure on the part of the Owners or "the Company" to comply with
the requirements of the ISPS Code or this Clause shall be for the
Owner's account.

(B) (i) The Charterers shall provide the CSO and the Ship Security
Officer (SSO)/Master with their full style contact details and any
other information the Owners require to comply with the ISPS Code.

14

COPY

RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED
APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS
OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

CLAUSE 62 - CONTINUED

(ii) Except as otherwise provided in this Charter Party, loss,
damage, expense, excluding consequential loss, caused by failure on
the part of the Charterers to comply with this Clause shall be for
the Charterers' account and any delay caused by such failure shall
be compensated at the demurrage rate.

(C) Provided that the delay is not caused by the Owners failure to
comply with their obligations under the ISPS Code, the following
shall apply:

(i) Notwithstanding anything to the contrary provided in this
Charter Party, the Vessel shall be entitled to tender Notice of
Readiness even if not cleared due to applicable security
regulations or measures imposed by a port facility or any relevant
authority under the ISPS Code.

(ii) Any delay resulting from measures imposed by a port facility
or by any relevant authority under the ISPS Code shall count as
laytime or time on demurrage if the Vessel is on laytime or
demurrage. If the delay occurs before laytime has started or after
laytime or time on demurrage has ceased to count, it shall be
compensated by the Charterers at the demurrage rate.

(D) Notwithstanding anything to the contrary provided in this
Charter Party, any additional costs or expenses whatsoever solely
arising out of or related to security regulations or measures
required by the port facility or any relevant authority in
accordance with the ISPS Code including, but not limited to,
security guards, launch services, tug escorts, port security fees
or taxes and inspections, shall be for the Charterers' account,
unless such costs or expenses result solely from the Owners'
negligence. All measures required by the Owners to comply with the
Ship Security Plan shall be for the Owner's account.

(E) If either party makes any payment which is for the other
party's account according to this Clause, the other party shall
indemnify the paying party.

15

COPY

RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED
APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS
OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

## CLAUSE 63

Laytime for loading and discharging ports is to be non-reversible.

## CLAUSE 64

In view that "Clean on Board" Bills of Lading are required, the
Master shall be entitled to reject any cargo, which would not so
qualify, and Shipper to replace it with sound cargo. However if the
Master wrongfully rejects any cargo, then all time/expenses
associated with same to be for the Owner's account.


\*   \*   \*   \*

16

Karen Stokoe

| | |
|---|---|
| **From:** | Andrea Skeoch |
| **Sent:** | 28 July 2005 15:35 |
| **To:** | 'operations@lalemantusa.com' |
| **Cc:** | DS Norden A/S (E-mail) |
| **Subject:** | "BONASIA" - C/P 15.04.05 A/C GLOBAL INFRASTRUCTURE HOLDINGS LTD |

To:     Global Infrastructure Holdings Ltd
        c/o Shelley - Lalemant USA Inc

cc:     Henrik Larsen
        DS Norden A/S

From:   Andrea Skeoch
Ref:    05/FDD/NEW/AS/KS

We should be grateful if you forward the below message and attachment on to Charterers, Global Infrastructure Holdings Ltd, and confirm to us once you have done so.

QUOTE

We are North Insurance Management Ltd, Managers of North of England P&I Association Ltd which holds the defence entry of the above vessel on behalf of disponent Owners, DS Norden A/S.

We understand from our Members that there is an outstanding balance due and owing to our Members in the sum of US$274,299.21 as per the final freight invoice attached.

As you will see, this balance relates to the balance of freight, demurrage at the loadport less despatch at the discharge port.

The balance of freight and loadport demurrage are undisputed by Charterers. In addition, Charterers have never made any comments on the calculation of despatch at the discharge port, and therefore we assume that that too is undisputed.

Notwithstanding that the balance of US$274,299.21 is undisputed and that Charterers can therefore have no defence to our Members' claim, Charterers have not paid the balance due, despite repeated demand.

Our Members have lost patience and we must therefore advise that unless payment of the undisputed balance of US$274,299.21 is received by close of business on Wednesday 3 August 2005, our Members will have no other option to take whatever steps may be available to them to obtain payment of the undisputed balance due.

Such steps will include (but will not be limited to) the commencement of New York arbitration proceedings without further notice, and notification of Charterers' failure to pay undisputed amounts to organisations such as the IMB, BIMCO and the Baltic Exchange.

We do trust this will not be necessary and look forward to receiving evidence of Charterers' irrevocable remittance of the sum of US$274,299.21 without further delay and, in any event, 3 August 2005.



Doc050728.tif

UNQUOTE

Thanks in advance for passing.

Kind regards

Andrea Skeoch
Solicitor - North Insurance Management Ltd
As Managers on behalf of the North of England P&I Association Limited
andrea.skeoch@nepia.com

**E X H I B I T   2**

# NORDEN

Global Infrastructure Holdings, Ltd.

Lob 16 411, Jebel Ali Free Zone
, DUBAI
United Arab Emirates

Date    26 July 2005

## Invoice

**m.v. Bonasia – C/P 15 April 2005**

| | |
|---|---|
| Freight:<br>45.374,6710 mt coal at USD 30,00 | 1.361.240,13 |
| Demurrage rounding | 258.204,39 |
| Despatch | (51.967,19) |
| Freight received 17-05-05 | (1.293.178,12) |
| | |
| **Balance in favour of D/S Norden A/S** | 274.299,21 |

Dampskibsselskabet 'NORDEN' A/S, 49, Amaliegade, DK-1256 Copenhagen K
Phone: +45 33150451.Telefax: +45 33155199. CVR no. 67758919
www.ds-norden.com



We ask you kindly to transfer above balance with value 13 May 2005 to:

Nordea Bank Denmark A/S
Strandgade 3, Postbox 850
0900 Copenhagen C
Denmark
SWIFT CODE: NDEADKKK
Credit Account: No. 5005553795
Iban No: DK7920005005553795
Beneficiary: Dampskibsselskabet 'NORDEN' A/S
Corresponding bank: JP MORGAN CHASE BANK, New York
Reference: Bonasia - - F07376 - Client 9172


Yours faithfully
D/S 'NORDEN' A/S
Henrik Larsen

*The Shipping System: Laytime Calculation*     23-06-2005     Page: 1

M/V    **BONASIA**                                              15-04-2005

| Partner | · | GLOBAL INFRASTUCTURE HOLDINGS LTD. |
|---|---|---|
| From/To | | NORFOLK / PLOCE |
| Details | | COAL IN BULK |
| C/P | | |

Calculating  Non reversible; Once on demurrage, always on demurrage

| Loading | at | NORFOLK | |
|---|---|---|---|
| Calculating | | Non reversible; Counting working time saved | |
| Cargo | mts | 45.374,671 | COAL IN BULK |
| Allowance | mts/day | 30.000,000 | |
| Demurrage rate | USD/day | 39.500,00 | |
| Despatch rate | USD/day | 19.750,00 | |

| Thu | 28-04-2005 | 08:12 | Vessel arrived |
|---|---|---|---|
| Thu | 28-04-2005 | 08:12 | Notice tendered |
| ،u | 28-04-2005 | 09:39 | Valid/accepted |
| Wed | 04-05-2005 | 07:00 | Left anchorage |
| Wed | 04-05-2005 | 09:25 | Vessel berthed |
| Wed | 04-05-2005 | 15:40 | Loading commenced |
| Thu | 28-04-2005 | 21:39 | Laytime commenced |
| Sat | 07-05-2005 | 02:00 | Operations completed |

| Date | From | Until | % to count | Remarks/Description | Time used | Total time days hh:mm |
|---|---|---|---|---|---|---|
| Thu 28-04-2005 | 21:39 | 24:00 | 100,00 | | 02:21 | 0  02:21 |
| Fri  29-04-2005 | 00:00 | 24:00 | 100,00 | | 24:00 | 1  02:21 |
| Sat 30-04-2005 | 00:00 | 09:57 | 100,00 | | 09:57 | 1  12:18 |
| | 09:57 | | | Vessel on demurrage | | |
| | 09:57 | 24:00 | 100,00 | | 14:03 | 2  02:21 |
| Sun 01-05-2005 | 00:00 | 24:00 | 100,00 | | 24:00 | 3  02:21 |
| Mon 02-05-2005 | 00:00 | 24:00 | 100,00 | | 24:00 | 4  02:21 |
| Tue 03-05-2005 | 00:00 | 24:00 | 100,00 | | 24:00 | 5  02:21 |
| ،،e 04-05-2005 | 00:00 | 06:40 | 100,00 | | 06:40 | 5  09:01 |
| | 06:40 | 09:25 | 0,00 | Shifting time not to count | 00:00 | 5  09:01 |
| | 09:25 | 24:00 | 100,00 | | 14:35 | 5  23:36 |
| Thu 05-05-2005 | 00:00 | 24:00 | 100,00 | | 24:00 | 6  23:36 |
| Fri  06-05-2005 | 00:00 | 24:00 | 100,00 | | 24:00 | 7  23:36 |
| Sat 07-05-2005 | 00:00 | 00:20 | 100,00 | | 00:20 | 7  23:56 |
| | 00:20 | 00:45 | 0,00 | Draft check | 00:00 | 7  23:56 |
| | 00:45 | 02:00 | 100,00 | Loading completed | 01:15 | 8  01:11 |

| Time allowed: | | 1 d  12:18 |
|---|---|---|
| Time used: | | 8 d  01:11 |
| **Time lost** | | **6 d  12:53** |

| Demurrage due: | 6 d 12:53 hrs at | USD | 39.500,00 /day = | USD | 258.203,82 |
|---|---|---|---|---|---|

*(c) Burmester & Vogel, Hamburg*



*The Shipping System: Laytime Calculation*          23-06-2005          Page: 2

M/V     **BONASIA**                                                     15-04-2005

| Discharging at | PLOCE |
|---|---|
| Calculating | Non reversible; Counting working time saved |
| Cargo | mts                45.374,671 COAL IN BULK |
| Allowance | mts/day          10.000,000 |
| Demurrage rate | USD/day          39.500,00 |
| Despatch rate | USD/day          19.750,00 |
| Excluded | from Sat   12:00  until   Mon 08:00 |

| | | | |
|---|---|---|---|
| Mon | 23-05-2005 | 07:12 | Vessel arrived |
| Mon | 23-05-2005 | 07:12 | Notice tendered |
| Mon | 23-05-2005 | 10:48 | Vessel berthed |
| Mon | 23-05-2005 | 14:15 | Discharging commenced |
| Mon | **23-05-2005** | **14:15** | **Begin of laytime counting** |
| Thu | **26-05-2005** | **21:00** | **End of laytime counting** |

| Date | From | Until | % to count | Remarks/Description | Time used | Total time days hh:mm |
|---|---|---|---|---|---|---|
| Mon 23-05-2005 | 14:15 | 24:00 | 100,00 | | 09:45 | 0  09:45 |
| Tue 24-05-2005 | 00:00 | 24:00 | 100,00 | | 24:00 | 1  09:45 |
| We 25-05-2005 | 00:00 | 12:00 | 100,00 | | 12:00 | 1  21:45 |
| | 12:00 | 24:00 | 0,00 | Public holiday | 00:00 | 1  21:45 |
| Thu 26-05-2005 | 00:00 | 21:00 | 0,00 | Public holiday | 00:00 | 1  21:45 |

| | | |
|---|---|---|
| Time allowed: | 4 d  12:54 | |
| Time used: | 1 d  21:45 | |
| **Time saved** | **2 d  15:09** | |

| **Despatch due:** | 2 d 15:09 hrs at | USD | 19.750,00 /day = | USD | **51.967,19** |
|---|---|---|---|---|---|

| | | |
|---|---|---|
| Total Demurrage net | USD | 258.203,82 |
| Total Despatch | USD | 51.967,19 |
| **Balance: Demurrage** | **USD** | **206.236,63** |

(c) Burmester & Vogel, Hamburg